## FRUIT GROWERS' EXPRESS CO. v. MASSIE.
### No. 4177.

Circuit Court of Appeals, Third Circuit.
May 23, 1930.

John Biggs, of Wilmington, Del., William G. Henderson and Carl H. Richmond, both of Washington, D. C., for appellant.

James A. Watson, of Washington, D. C., and Busser & Harding, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below suit was brought by Massie, assignee of patent No. 1,588,948, granted June 15, 1926, to E. A. Downey for a "connector for ventilating racks and trays," charging infringement. After hearing, that court entered a decree holding, inter alia, that the patent was "good and valid in law as to all the claims thereof." Thereupon the defendant took this appeal assigning for error, inter alia, that the Court erred in so decreeing that the patent was "good and valid in law as to all the claims thereof." Inasmuch as this assignment is basic and as we have reached the conclusion the court was in error in decreeing the patent valid, we confine ourselves to that question alone, as error in that regard necessitates dismissal of the bill without reference to the other questions involved.

The proofs in the case show that the defendant was a manufacturer of refrigeration fruit cars. Such cars were equipped with fruit carrying racks which were slatted so as to permit ventilation. They were also provided with heavy hinges which allowed the racks to be folded over. This facilitated removal for cleaning. There was no proof that there had been any dissatisfaction with these hinged racks or any general call of the art for improvement therein. The hinges commonly used on the double racks extended above the rack, when flattened out, and thus made an uneven floor on which to rest fruit packages. The appellant express company desired a hinge that would not project above the rack floor and quite generally let its desire be known to men about the plant. Downey conceived the hinge in question, which is a two-way hinge hidden beneath the floor of the rack. Downey, the alleged inventor, was a carpenter in defendant's shops, who described his work as "Carpenter jobs— any special jobs that come into the shop they generally turn over to me; Yes, putting in handles and any necessary work that employees make outside and they will come in to me and I will help them out."

"Q. Have you any contract with the company other than simply hired by the day or week? A. No, sir.

"Q. Have you been employed in putting in floor racks? A. No, sir.

"Q. Your work is indoor work? A. Yes, sir.

"Q. Floor racks are put on the cars outdoors? A. Yes, sir."

Taking the stand as a witness, he was asked to "state the circumstances under which you made this invention and about when?" The entire testimony as to such origin was as follows:

"A. Mr. Herold came in the shop a few minutes before four with some pieces of iron and held them up and said, 'How for a floor rack hinge?' Mr. McEwan said they needed a hinge that was wanted under the floor surface. I called Mr. Herold and Mr. McEwan over to the bench and on a drawing board I made a pencil sketch of a loop and explained to Mr. McEwan and Mr. Herold how it could be done.

"Q. Examine Plaintiff's Exhibit B for identification and say whether you recognize that as the sketch you have referred to? A. Yes, sir.

"Q. Was that sketch made on a block of that size? A. No, sir; it was a larger piece and I cut this small piece off."

Herold was not called as a witness, and, though McEwan, who was a foreman employed by the defendant, denied the testimony of Downey that he was the originator of the hinge and claimed he himself was the originator, we will not consider McEwan's testimony and confine ourselves to Downey's account of the origin of the device. It will thus be seen that by his own account, just as soon as it was suggested "they needed a hinge that was wanted under the floor surface," he, as a carpenter, without any experimental work, showed how it could be done and then and there made a sketch on a piece of board, which, as found by the court, "fully illustrates and discloses the subject matter of the invention."

Turning to the hinge in ordinary use, we note that each side of the hinge is provided with a cylindrical opening into which a bolt is inserted, which binds the hinge parts together but allows rotation by each. This construction necessitates the hinge-joining pin and the inclosing cylindrical parts of the hinge parts to project from the surface of the structure to which the hinge is attached. Downey still retained a cylindrical end of one hinge side and with a pin through it, but this pin he provided with a link which couples to the other hinge side and provides such latter part with an elongated slot in which the connecting link is entirely below the surface. This device, which has a separate pin for connection with each hinge side, drops the hinge connections below the surface and also permits the two sections of the rack to be doubled back in both directions. That it is clever mechanism is the fact, but we are constrained to regard it as a natural development which was supplied just as soon as some one else suggested the idea of a subsurface hinge. Indeed the originality would seem to have been the idea of such a subsurface device rather than carrying out such original idea. And as being in the sphere of the advance incident to such art, it appears by uncontradicted evidence that shortly thereafter, when the defendant suggested to McEwan, one of its foremen, whether he might not utilize a large lot of hinges which it had on hand, he at once made a subsurface device which did not use the link of Downey with two hinge openings to meet two pins, but one pin for one hinge end as in the old construction and making a third pin element in which a triangular extension of one hinge pin was made to connect with a bar strap with one end of which the pin of one hinge side played, and at the other the pin formed by the triangle, sleeved in the other hinge side,

also played. This flexible connection, which McEwan quickly planned when the utilization of the old hinges on hand was suggested, showed the ability of the art to meet such calls.

Recognizing as we do that there was no demand in the art for such a device; that there were no attempts to make any such article; that the engineering skill of the art was not even called on to make any such device; that, when devised, no licensing or use of it has been made other than that of the defendant's use of an alleged shop right of an employee's device, we adhere to the teaching and spirit of that master mind in patent learning, who, firm to sustain where there was invention and vigilant to deny where there was mere noninventive advance, said in 107 U. S. 200, that, except "something above ordinary mechanical or engineering skill is shown," the grant of a patent "is unjust in principle and injurious in consequence."

Satisfied as we are that nothing above the engineering skill or indeed the mechanical skill of the art is here shown, we hold the patent in question invalid.